IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THERESA LINSMEIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-1055-STE |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following two administrative hearings, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-30). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of May 6, 2020 through her date last insured of December 31, 2021. (TR. 18). At step two, the ALJ determined Ms. Linsmeier suffered from the following severe impairments: lumbar spine fracture; degenerative disc disease of the lumbar spine and bilateral sacroiliac joints; bilateral carpal tunnel syndrome; obesity, paroxysmal atrial fibrillation; and hypothyroidism. (TR. 18). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 21).

At step four, the ALJ concluded that Ms. Linsmeier retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand or walk in combination for 6 hours in an 8-hour workday with normal breaks and can sit for 6 hours in an 8-hour workday with normal breaks. The claimant, after standing or walking for 60 minutes, needs the opportunity to alternate positions and can then return to the same or a different position without a loss of productivity. The claimant can occasionally climb ramps and stairs but can never climb ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, and crouch, but cannot crawl. She can frequently balance as

> that is defined in the Selected Characteristics of Occupations (SCO) of the Dictionary of Occupational Titles (DOT). The claimant can have occasional exposure to moving mechanical parts but cannot be exposed to unprotected heights. The claimant can frequently operate a motorized vehicle. The claimant can have occasional exposure to extreme cold, extreme heat, vibrations, humidity, wetness & atmospheric conditions as that is defined by the SCO of the DOT.

(TR. 22-23).

With this RFC, the ALJ concluded that Plaintiff could not perform her past relevant work. (TR. 28). Thus, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 70). The VE identified three jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 71-72). Although the ALJ's decision was ambiguous, the parties agree that the ALJ adopted the VE's testimony and concluded that Ms. Linsmeier was not disabled based on her ability to perform the identified jobs. (ECF Nos. 8:5 & 11:3).

### III.   ISSUES PRESENTED

On appeal, Plaintiff alleges error in the ALJ's evaluation of Plaintiff's mental impairments in determining the RFC. (ECF No. 8:5-16).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard,

3

a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.    THE ALJ'S EVALUATION OF PLAINTIFF'S MENTAL IMPAIRMENTS

Ms. Linsmeier alleges error in the ALJ's assessment of Plaintiff's mental impairments. (ECF No. 8:5-16). Ms. Linsmeier's argument has merit.

### A.    History and Evidence Pertaining to Plaintiff's Mental Impairments

Ms. Linsmeier alleged a disability based, in part, on mental impairments, with an onset date of May 6, 2020. *See* TR. 84, 376. Following her application, two administrative hearings were held—dated October 13, 2021 and May 23, 2022. *See* TR. 42-115.

At the first hearing, Plaintiff testified that once weekly, she saw a counselor, Vickie Donahue, and she had been prescribed Fluoxetine to treat her depression. TR. 96. Plaintiff testified that she suffered approximately three panic attacks per week, each lasting roughly thirty minutes each time. (TR. 97). Ms. Linsmeier also testified that she suffered

crying spells once a week, which lasted from 30 minutes to one hour, and daily mood swings which involved extreme anger. (TR. 97-98). Plaintiff also testified that she was bothered by her PTSD approximately twice weekly and that she had difficulty being out in public and around people. (TR. 99). Ms. Linsmeier testified that her anxiety caused her difficulty in leaving the house approximately 80% of the time and that when she did leave the house, she was only able to be gone for 1-2 hours at a time. (TR. 99-100). Plaintiff stated that her mental impairments caused her difficulty concentrating, which she was only able to do for "maybe half an hour." (TR. 101). At the second hearing, Ms. Linsmeier's attorney noted that Plaintiff had mentioned to a provider that she had experienced "minimal improvement on Prozac." (TR. 53). Ms. Linsmeier confirmed that was the case and that she had been given a supplemental medication, but all the pills did was to make her "sleep a lot." (TR. 53).

On April 6, 2018, Plaintiff had an initial psychological intake done by Ms. Donahue, wherein Plaintiff was diagnosed with severe major depressive disorder and moderate generalized anxiety disorder; and it was determined that Plaintiff would benefit from individual weekly therapy in an attempt to "[i]mprove [Plainitff's] moods and emotions by 50% or more." (TR. 1060, 1080). On May 21, 2020, Ms. Donahue completed another treatment plan for Ms. Linsmeier which confirmed the diagnoses of adjustment disorder, major depressant disorder, and post-traumatic stress disorder; and recommended continued weekly therapy. (TR. 1100). On November 30, 2020, Ms. Donahue completed a Medical Source Statement, wherein she opined that Plaintiff was diagnosed with

adjustment disorder, major depressant disorder, and post-traumatic stress disorder; and suffered from "marked" and "extreme" limitations in the areas involving her ability to:

- make simple, work-related decisions;
- interact with the general public;
- ask simple questions or request assistance;
- accept instructions and respond appropriately to criticism from supervisors;
- maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- respond appropriately to changes in the work setting;
- be aware of normal hazards and take appropriate precautions; and
- set realistic goals or make plans independently of others.

(TR. 1141-1143). Ms. Donahue also opined that Plaintiff would likely be "off task" 25% of her day and experience symptoms which would cause her to miss work approximately three days each month. (TR. 1141).

At a psychological assessment with Advanced Registered Nurse Practitioner Tasha Preston dated March 31, 2022, Plaintiff scored a "12" on the GAD-7 assessment for anxiety and a "22" on the PHQ-9 test.[1]

---

[1] The GAD-7 scale is a popular tool for assessing anxiety. It is used by mental health professionals to measure the severity of anxiety symptoms in their patients. A score of 10-14 implies moderate anxiety. *See* https://mantracare.org/therpay/anxiety/gad-7/. (last visited June 12, 2023). The PHQ-9 test is an assessment for depression, with a score of over 20 indicating "severe" depression. *See* https://www.ncbi.nlm.nih.gov/pmc/artciles/PMC (last visited June, 12, 2023).

## B.    The ALJ's Assessment of Plaintiff's Mental Impairments

At step two, the ALJ determined that Plaintiff suffered from medically determinable impairments involving adjustment disorder, mood disorder, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. (TR. 24). Thus, pursuant to the Social Security regulations, the ALJ was required to rate the degree of Ms. Linsmeier's functional limitations in following four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself—the so-called "B" criteria. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(C). In each area, the possible ratings are none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the ratings in all four areas are "none" or "mild," a claimant's mental impairment is generally considered to be non-severe. 20 C.F.R. § 404.1520a(d)(1).

Pursuant to these regulations, The ALJ analyzed Plaintiff's medically determinable mental impairments under the "B" criteria. (TR. 19-21). Ultimately, the ALJ determined that because Plaintiff had no more than a mild impairment in any of the four functional areas, her mental impairments were not severe. (TR. 21). At step four, the ALJ found no mental limitations in determining Plaintiff's RFC.

Ms. Linsmeier's challenge to the ALJ's evaluation of her mental impairments is two-fold. First, she argues that "the evidence of Linsmeier's mental impairments is sufficient to satisfy the *de minimis* standard [to qualify as a severe impairment] at step two." (ECF No. 8:7). Second, independent of any error at step two, Plaintiff argues that the ALJ failed

to consider Plaintiff's mental impairments in determining her RFC at step four. (ECF No. 8:10-15).

### 1. Step Two

At step two, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. *See Dray v. Astrue,* 353 F. App'x 147, 149 (10th Cir. 2009). "[S]tep two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.' " *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 156, (1987) (O'Connor, J., concurring)). In circumstances where an ALJ deems at least one impairment severe, and proceeds to the remaining steps of the evaluation, any error at step two in failing to deem a certain impairment severe is considered harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

At step two, the ALJ determined that Ms. Linsmeier suffered from "severe" lumbar spine fracture, degenerative disc disease of the lumbar spine and sacroiliac joints, and bilateral carpal tunnel syndrome. (TR. 18). Following the step two findings, the ALJ continued to perform the five-step sequential disability evaluation at it pertained to Ms. Linsmeier. (TR. 21-30). Thus, any error in the ALJ's failure to conclude that any of Plaintiff's mental impairments were severe, was harmless. *See supra*.

### 2. Step Four

The rationale behind the application of harmlessness at step two is "because *all* medically determinable impairments, severe or not, must be taken into account at those later steps [of the sequential evaluation]." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*"). Ms. Linsmeier alleges that the ALJ failed to consider the effects of her mental impairments when formulating the RFC. (ECF No. 8:10-15). The Court agrees.

As stated, at step two, the ALJ concluded that Plaintiff's mental impairments were not severe. (TR. 19). In doing so, the ALJ:

- Rejected Ms. Donahue's opinions as set forth in her Medical Source Statement as inconsistent with the record as a whole and not supported by the treatment provided; and

- Adopted the prior administrative findings from State Agency psychologists who deemed Plaintiff's mental impairments "non-severe."

(TR. 19).

In assessing the RFC at step four, the ALJ obviously believed that Plaintiff suffered no functional limitations relating to any mental impairment, as is reflected by her absence of the same in the RFC. The ALJ was entitled to reach this conclusion, but according to Ms. Linsmeier, the ALJ erred at step four by failing to consider the effect of Plaintiff's mental impairments on the RFC, especially considering the mental requirements of the

9

skilled jobs the ALJ relied on at step five. (ECF No. 8:10-15). The Court agrees with Ms. Linsmeier.

At step four, in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe. *See* 20 C.F.R. §§ 404.1545(a)(2). The Social Security Administration has specifically stated that the criteria used at steps two and three of the analysis to evaluate mental impairments are "not an RFC assessment," and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]." Social Security Ruling 96–8p, 1996 WL 374184, at *4 (July 2, 1996).

Here, the ALJ's entire analysis of Plaintiff's mental impairments took place at step two. The Commissioner contends otherwise, arguing that in evaluating Ms. Linsmeier's RFC, the ALJ: (1) "specifically considered" Plaintiff's testimony regarding her anxiety, panic attacks, crying spells, mood swings, inability to be around others, and difficulty concentrating and (2) thereafter found Plaintiff's complaints to be "not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in [her] decision.*" (ECF No. 11:10-11). Apparently, Ms. Kijakazi believes that the ALJ's statement that she rejected Plaintiff's testimony regarding her mental impairments for

10

"the reasons explained in [the ALJ's] decision" sufficed as a proper analysis of the mental impairments at step four because the ALJ had previously relied on:

- Normal mental status examinations findings;
- The fact that Plaintiff's mental symptoms were controlled by medication;
- The absence of mental limitations in various function reports; and
- The State agency psychologists' opinions that Plaintiff's mental impairments were "non-severe."

For two reasons, the Court disagrees. First, the ALJ had relied on those findings at step two, as discussed. *See supra; see* TR. 19-21. Second, the ALJ's extensive discussion of the objective evidence and medical opinions regarding Plaintiff's physical impairments following her "explanation" appear to be the "reasons explained in [the] decision," and the "reasons" the ALJ provided at step two are simply too far removed from the discussion at step four.

Ms. Kijakazi further attempts to salvage the ALJ's discussion by relying on *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) and *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013), but the Court does not find these opinions persuasive.

First, in *Suttles*, the Court found no error in the ALJ's evaluation of the plaintiff's mental impairments at step four because the ALJ recognized the legal standard required to assess the mental impairments and then, at step four, "discussed evidence relating to [the plaintiff's] depression and then pointedly omitted any limitation associated with that mental impairment." *Suttles v. Colvin*, 543 F. App'x at 826. In the instant case, while the

ALJ's opinion explicitly acknowledged the proper legal standard,[2] her only further comment regarding Plaintiff's mental impairments was at the end of her step two analysis, where she stated: "the following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (TR. 21). But unlike in *Suttles*, the ALJ here did not thereafter discuss evidence relating to Plaintiff's mental impairment at step four. *See* TR. 21-28.

In *Alvey*, the Court found error under *Wells*, but deemed the error harmless, stating, "[b]ecause the evidence in this case does not support assessing any functional limitations from mental impairments, we believe it appropriate to assess harmless error and avoid a futile remand." *Alvey v. Colvin*, 536 F. App'x at 794. But here, the opinions from Ms. Donahue indicate "marked" and "extreme" limitations in several areas—evidence which could support functional limitations from mental impairments. Although the ALJ rejected Ms. Donahue's opinion, her rationales for doing so lack substantial evidence.

According to the ALJ, Ms. Donahue's opinions were "not consistent with the record as a whole, nor supported by the treatment provided" and "[t]he record indicate[d] the claimant's mental impairments [we]re generally controlled with medication management." (TR. 19). In concluding that Ms. Donahue's opinions were "not consistent with the record as a whole, nor supported by the treatment provided," the ALJ generally cited Exhibits 9F and 15F. (TR. 19). Exhibits 9F and 15F are treatment notes from Ms. Donahue detailing Plaintiff's treatment. *See* TR. 1046-1101, 1149-1169. So in addition to

---

[2] (TR. 21).

the fact that the ALJ did not cite to any specific treatment notes in Ms. Donahue's records, the ALJ's reliance on records from *Ms. Donahue alone* would not support a finding that Ms. Donahue's opinion is "not consistent with the record as a whole."

Furthermore, although the record contains evidence from Ms. Donahue outlining weekly individual therapy for Ms. Linsmeier to help her cope with her mental impairments, a letter from Plaintiff's attorney's office stated that absent a court order, Ms. Donahue was unable to release additional information regarding Plaintiff's treatment, although weekly therapy visits from November 12, 2020 and August 17, 2021 were confirmed. (TR. 1148). Thus, the ALJ was privy to information which indicated that additional information existed regarding Plaintiff's mental impairments, although there is no indication that the ALJ took further steps to obtain such information. Instead, she simply stated that the opinions in Ms. Donahue's Medical Source Statement were not "supported by the treatment provided." (TR. 19). Without the additional records documenting the weekly treatment, the ALJ's rationale resonates as insincere, at best.

In sum, the Court finds error in the ALJ's consideration of Plaintiff's mental impairments in assessing the RFC at step four. Although the ALJ considered the impairments at step two and deemed them non-severe, she had an additional duty to consider the impairments in determining the RFC. As part of her RFC assessment, the ALJ acknowledged Ms. Linsmeier's testimony regarding her mental impairments, but she did not thereafter state whether she believed Plaintiff's subjective allegations or explain her obvious rejection of the same. Finally, the ALJ's error in this regard is not harmless,

because: (1) her explanations for rejecting Ms. Donahue's opinions lack substantial evidence and (2) it appears as though additional information relating to Plaintiff's mental impairments in the form of treatment records from Ms. Donahue exists, which the ALJ should have obtained. On remand, the ALJ shall issue a court order requiring release of said treatment records in order to further and more completely analyze Ms. Donahue's opinions regarding Plaintiff's mental impairments and limitations as outlined in the Medical Source Statement. In doing so, the ALJ shall assess the mental impairments at both steps two and four, in accordance with the regulatory standards outlined above.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on June 26, 2023.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE